<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| R.S., D.S., and o/b/o minor child A.S., | |
| | **Civil Action No. 14-cv-0024 (SRC)** |
| Plaintiffs, | |
| v. | **OPINION** |
| Glen Rock Board of Education, John Arlotta, Melissa Brinton, Joyce Fitzmaurice, Christopher Fox, Philip Paterno, Steve Purciello, Edward Thompson, David Verducci, Frank Violante, John Does (1-20) Names Being Fictitious, | |
| Defendants. | |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court upon the motion filed by Defendants for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiffs oppose the motion. The Court has considered the parties' submissions. For the reasons expressed in this opinion, the Court will grant Defendants' motion and dismiss Plaintiffs' Complaint without prejudice.

    **I.**     **BACKGROUND**

    **A. Factual History**

In this case, the parents of a special-needs student present various grievances against the institutions and individuals responsible for educating their child. The Court takes the following facts from Plaintiffs' Complaint and assumes them to be true for purposes of this motion only.

1

The minor at the center of this action, "A.S.," was born in 1997. In April of 2003, when A.S. was six years old, A.S. acted violently toward another child. Defendant Glen Rock Board of Education ("the Board") classified A.S. as being "other health impaired." Around the same time, the Glen Rock Child Study Team ("the CST") learned that A.S. suffered from attention deficit hyperactivity disorder ("ADHD"). In 2011, when A.S. was in eighth grade, the CST reclassified A.S. as being "emotionally disturbed," which reflected progress in A.S.'s ability to maintain personal relationships with his peers and teachers.

By law, these classifications entitled A.S. to special services at school. Over the course of A.S.'s education, the Board and other school entities provided A.S. with general behavioral intervention plans, help from a resource center, and weekly counseling sessions. A.S.'s parents, Plaintiffs R.S. and D.S. ("Plaintiff Parents" or "Plaintiffs"), viewed these special services as inconsistent and inadequate. They periodically sought additional services to no avail.

On January 24, 2012, a violent incident ("the Incident") took place at Glen Rock High School-Middle School ("the School"). A.S. was a member of the wrestling team. After classes let out on the 24th, A.S. and other students were unsupervised on school grounds as they waited for wrestling practice to begin. "Horseplay" broke out among the students, and afterward authorities charged A.S. with the battery or assault of three students. The School suspended A.S. for five days. Other students' parents filed complaints, and the Incident received publicity.

Plaintiff Parents assert in their Complaint that after the Incident, they reached a Settlement Agreement with the Board and other school entities, and that pursuant to the Settlement Agreement, A.S. now attends a private, out-of-state boarding school.

### B. Procedural History and Defendants' Motion

On January 3, 2014, Plaintiffs filed a Complaint in this Court. As a cause of action, Plaintiffs assert that Defendants violated the federal Individuals with Disabilities Education Act ("the IDEA") by failing to provide A.S. with adequate education plans, failing to provide A.S. with an appropriate education "for the school years 2003 through 2012" (Compl. ¶ 47), and failing to supervise A.S. on the day of the Incident.

On June 30, 2014, Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In support of their motion, Defendants make four arguments. They first argue that Plaintiffs' claims are time-barred by the IDEA's two-year statute of limitations. Second, Defendants assert that Plaintiffs' claims are precluded by the Settlement Agreement, in which Plaintiffs waived their rights against the School with respect to A.S.'s education. Next, Defendants note that the IDEA does not create liability for individuals, yet Plaintiffs improperly name various school officials as Defendants. Finally, Defendants assert that because Plaintiffs' IDEA claims are barred, the Court should not consider any state claims.

Plaintiffs oppose the motion. They argue that their claims are not time-barred. In support of that contention, they cite to an extended statute of limitations for tort claims involving minors, and they urge that Defendants continue to violate the IDEA. Plaintiffs also counter that the Settlement Agreement does not bar this action. In their opposition brief, Plaintiffs articulate that they are entitled to summary judgment on their failure-to-supervise claim, and that Defendants' motion is improper.[1]

---

[1] Plaintiffs did not follow the procedures for filing a summary judgment motion. Among other deficiencies, Plaintiffs did not include a statement of undisputed material facts, which alone warrants dismissal. Local Civil Rule 56.1 ("A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed.").

3

## II. DISCUSSION

### A. Motions to Dismiss

"The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)." Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir. 2011). A court may dismiss a claim under Rule 12(b)(6) only if, accepting all of the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the non-movant, it finds the claims facial plausible. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). The complaint must contain sufficient factual allegations to raise a right to relief above the speculative level. Id. at 1965; Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65; see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Accordingly, the Court will identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 680). A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Iqbal, 556 U.S. at 679.

In evaluating a Rule 12(b)(6) motion, the Court may consider only the complaint, exhibits attached to it, matters of public record, and undisputedly authentic documents.[2] See

---

[2] The parties attached various certifications and other materials to their submissions on this motion. With the exception of the Settlement Agreement and Administrative Order, discussed below, the Court will not consider those papers, which fall outside the permissible record on this motion. Because the Court has not considered those documents, and such consideration is not needed for disposition, the Court will not convert the motion to one for summary judgment.

4

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The issue before the Court boils down to "not whether plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence in support of the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). It is through this lens that the Court will assess Plaintiffs' Complaint.

### B. Administrative Exhaustion Under The IDEA

The IDEA guarantees special-needs students the right to a free and appropriate public education ("FAPE") and it "establishes an elaborate procedural mechanism to protect" that right. Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994). Under that procedural framework, individuals are entitled to a due process hearing in front of an administrative official. Id. Anyone who receives an adverse decision in such an administrative proceeding may file a lawsuit in state or federal court. Id. (citing 20 U.S.C. § 1415(e)(2)).

Individuals who wish to state a claim under the IDEA, however, "must exhaust administrative remedies" prior to initiating a lawsuit. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 270-71 (3d Cir. 2014) (emphasis in original) (citing Komninos, 13 F.3d at 778). The policy requiring administrative exhaustion is "strong" and serves multiple purposes:

> The advantages of awaiting completions of the administrative hearings are particularly weighty in [IDEA] cases. That process offers an opportunity for state and local agencies to exercise discretion and expertise in fields in which they have substantial experience . . . . [C]ourts should be wary of foregoing the benefits to be derived from a thorough development of the issues in the administrative proceeding.
>
> [Id. at 271.]

The exhaustion requirement also reflects "Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together[.]"

Komninos, 13 F.3d at 778 (quoting Smith v. Robinson, 468 U.S. 992, 1011–12 (1984)).  In addition to best serving the needs of those involved in IDEA disputes, administrative exhaustion "provide a means to develop a complete factual record . . . . [and to] produce facts and opinions relevant to the very same issues presented to the court by plaintiffs."  Id. at 779.

Accordingly, the role of a district court in assessing IDEA claims is limited, and it involves reviewing, rather than replacing, an administratively developed record.  Id. at 778 (noting that the Court "reviews the records of the administrative proceedings, hears additional evidence at the request of a party, and grants such relief as may be appropriate.").  A district court that intervenes before an agency fully weighs in would create a "duplication of effort in evaluating the same areas of controversy" and foreclose the "active, intense participation by parents, educational authorities, and medical personnel[.]"  Id. at 779.

Once a party does exhaust its administrative remedies, there is a limited period of time to seek judicial review.  Specifically, an aggrieved party has 90 days from "the date of the decision of the [administrative] hearing officer" to file suit.  Blunt, 767 F.3d at 270 (citing 20 U.S.C. § 1415(i)(2)(B)); see also Jonathan H. v. The Souderton Area Sch. Dist., 562 F.3d 527, 530 (3d Cir. 2009) ("Section 1415(i)(2)(B) limits a party's right to 'bring an action' to within 90 days after the final administrative decision.").

### C.  Plaintiffs Have Not Exhausted Administrative Remedies

Here, Plaintiffs did not exhaust their administrative remedies before filing this lawsuit, which undermines the important policies that exhaustion serves.

The essence of Plaintiffs' Complaint urges that Defendants violated A.S.'s rights under the IDEA.  Plaintiffs do not, however, present to the Court an administratively developed record which could serve as the basis for judicial review.  Assessing Plaintiffs' claims under these

6

circumstances would deny administrative personnel an opportunity to exercise their expertise, Blunt, 767 F.3d at 271, prevent Plaintiffs and Defendants from working together with agency officials, Smith, 468 U.S. at 1011–12, and bypass the requirement that a full and meaningful record be developed at the administrative level, Komninos, 13 F.3d at 778-79.  Moreover, there is no reason why exhaustion should be excused in this case:  the claims presented are fact sensitive, not purely legal; Plaintiffs do not cite any emergency which requires immediate intervention, and there is no apparent reason why administrative proceedings would be futile, or why an agency could not craft an appropriate remedy.  Cf. Blunt, 767 F.3d at 271 (reviewing the "very limited exceptions" to the exhaustion requirement).

With respect to the exhaustion requirement here, it is relevant to note that the parties reached a Settlement Agreement, which was then approved and so-ordered by an administrative officer.  The parties cite and attach these documents to their motion papers, and the Court may address them.  Pension Ben. Guar. Corp., 998 F.2d at 1196 (holding that court deciding motion to dismiss could consider a concededly authentic document attached as exhibit by defendant when the plaintiff's claims were based on it).  Administrative Law Judge Carol Cohen ("the ALJ") issued a two-page order on June 14, 2012, which found that the parties' settlement was entered into voluntarily and that it was lawful.  The order asserts that the "settlement fully disposes of all issues in controversy between [the parties] and is consistent with the law," and it mandates compliance with the settlement's terms.  (Docket Entry 10-3).  In pertinent part, the ALJ also writes, "This decision is final pursuant to 20 U.S.C.A. § 1415(i)(1)(A)[.]"  (Docket Entry 10-3).

There is some authority which might suggest that further administrative proceedings are unnecessary if an agency has signed off on a resolution reached by the parties.  See Lewis M.

7

Wasserman, Delineating Administrative Exhaustion Requirements and Establishing Federal Courts' Jurisdiction Under the Individuals with Disabilities Education Act: Lessons from the Case Law and Proposals for Congressional Action, 29 J. Nat'l Ass'n Admin. L. Judiciary 349, 390 (2009) ("[W]here parties have entered into stipulations of settlement which have been 'so ordered' by an IDEA hearing officer, courts have excused exhaustion on the ground of futility in actions to enforce those orders.") (citing Eddins v. Excelsior Indep. Sch. Dist., 1997 WL 470353, at *6-7, 9-11 (E.D. Tex. 1997) (magistrate's recommendation); Woods ex rel. T.W. v. N. J. Dep't of Educ., 796 F. Supp. 767, 775 (D.N.J. 1992)); see also Fortes-Cortes v. Dep't of Educ., 2013 WL 955108, at *7 (D.P.R. Mar. 12, 2013).

Yet the Court finds that the ALJ's order in this case does not render Plaintiffs' claims reviewable, for three reasons. First, bypassing administrative exhaustion simply because an agency approved of the parties' settlement would likely cause the "serious adverse effects" that follow whenever the requirement is bypassed. Komninos, 13 F.3d at 779. In particular, when agency input is confined to a cursory statement that the parties' settlement is voluntary and lawful, judicial intervention would undermine Congressional intent that agencies first develop their own facts and opinions on IDEA disputes. Id.

Second, Plaintiffs' Complaint does not actually challenge nor appeal from the administrative order, nor does it allege that Defendants breached the terms of the Settlement Agreement. The Complaint articulates independent claims that Defendants violated the IDEA. The Complaint is not tethered to the earlier administrative proceedings, and thus Plaintiffs are not "aggrieved" parties seeking the kind of judicial "review" which is contemplated under the statute. Id. at 778. Finally, even if the Court were to construe Plaintiffs' Complaint as a plea for judicial review of the administrative order, Plaintiffs would have had to file that claim within

ninety days of the June 15, 2012 Order.  20 U.S.C. § 1415(i)(2)(B).  Plaintiffs did not file this action until January of 2014, which is well beyond the permitted filing period.

In sum, in the context of IDEA, District Courts act in a quasi-appellate capacity, and their role is to review an administratively developed factual record.  Because this case asks the Court to assess IDEA claims in the first instance, and without the aid of a record, the Court will grant Defendants' motion and dismiss Plaintiffs' IDEA claims.  The Court finds that Plaintiffs cannot cure the deficiencies outlined above, and accordingly it will not grant Plaintiffs leave to amend their IDEA claims.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (requiring district court to permit leave to amend complaint unless it would be "futile" to do so).

**D.  Other Deficiencies With Plaintiffs' IDEA Claims**

The Court briefly notes that there are other shortcomings in Plaintiffs' IDEA claims.  20 USC § 1415(f)(3)(C) and 20 USC § 1415(b)(6) require that complaints alleging violations of the IDEA be filed within two years of when the parent knew or should have known about the alleged activity forming the basis for the Complaint.  Here, again, Plaintiffs filed this suit on January 3, 2014, which would limit their recovery to any IDEA violations that took place after January 3, 2012.  Additionally, Plaintiffs' claims against the individual school officials appear to lack authority for imposing individual liability under the IDEA.  Cf. Taylor v. Altoona Area Sch. Dist., 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007) ("The United States Court of Appeals for the Third Circuit has recognized that Congress does not normally seek to impose liability on individuals when it places conditions on the receipt of federal funds by entities that employ such individuals . . . . [which] counsels against a determination that individuals can be held liable for IDEA violations.") (citing Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.2002)).

9

### E. State Claims

Plaintiffs' Complaint states a cause of action that appears to rest exclusively on purported IDEA violations. Other portions of the Complaint also mention potential violations of New Jersey statutes and tort laws. The Court having decided to dismiss Plaintiffs' federal IDEA claims, it will also dismiss without prejudice any state claims which may have been stated. <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

### III. CONCLUSION

For the reasons above, the Court will grant Defendants' motions and dismiss without prejudice all of the claims in Plaintiffs' Complaint. For the reasons also expressed in this opinion, the Court will dismiss Plaintiffs' summary judgment motion.

    s/ Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

Dated: December 19, 2014